United States Court of Appeals
Fifth Circuit

**F I L E D**

August 8, 2006

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

No. 05-20636

**UNITED STATES OF AMERICA,**

Plaintiff-Appellee,

**versus**

**CHARLES CHENOWITH,**

Defendant-Appellant.

**Appeal from the United States District Court
for the Southern District of Texas**

Before JONES, Chief Judge, and BARKSDALE and BENAVIDES, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

Primarily at issue is the denial of Charles Chenowith's motion, pursuant to his civil-rights restoration, to quash (dismiss) his indictment. He claims that restoration precluded his prior Ohio felony conviction from serving as the predicate offense for his felon-in-possession charge. **VACATED and REMANDED.**

I.

In August 2004, Special Agents with the Bureau of Alcohol, Tobacco, Firearms, and Explosives found a revolver while executing a search warrant at Chenowith's residence. That September, he was indicted for knowingly and unlawfully possessing the revolver in

and affecting interstate or foreign commerce, subsequent to being convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  The predicate felony was a 1974 manslaughter to which Chenowith had pleaded guilty in Ohio.

Pre-trial, Chenowith moved to dismiss the indictment, claiming, *inter alia*, it failed to allege a prior conviction as defined in 18 U.S.C. § 921(a)(20), because he had received a certificate from Ohio in 1978 restoring the rights forfeited by his Ohio conviction, namely his rights to vote, serve on juries, and hold public office.  That motion was denied.

Chenowith was convicted by a jury.  In May 2005, he was sentenced, among other things, to 12 months and one day imprisonment.  He is free on bail, pending appeal.

## II.

Chenowith primarily claims the district court erred in not dismissing his indictment because his Ohio conviction did not serve as a predicate offense for purposes of § 922(g)(1).  (Because Chenowith prevails on this issue, we need not reach his claims that the district court erred by:  admitting evidence of a prior felony conviction from Louisiana; not *sua sponte* giving a limiting instruction regarding that conviction; denying his requested instruction limiting the predicate offense for the felon-in-

2

possession charge; giving a deliberate-ignorance instruction; and denying an acceptance-of-responsibility reduction.)

Chenowith presents two claims regarding the refusal to dismiss. First, he asserts that, under 18 U.S.C. § 921(a)(20), his Ohio conviction was *not* a felon-in-possession predicate offense because his civil rights had been restored in Ohio. (Because this claim has merit, we need not reach his second claim — his Ohio conviction was the result of an invalid plea.)

"The question whether a felony conviction may serve as a predicate offense for a prosecution for being a felon in possession of a firearm pursuant to § 922(g)(1) is purely a legal one", for which we have plenary review. *United States v. Daugherty*, 264 F.3d 513, 514 (5th Cir. 2001) (internal citation and quotation marks omitted), *cert. denied*, 534 U.S. 1150 (2002).

Section 922(g) provides: "[A]ny person ... who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding a year" is prohibited from, *inter alia*, possessing "any firearm or ammunition". 18 U.S.C. § 922(g). Concerning whether Chenowith's Ohio conviction served as a predicate offense, § 921(a)(20) proscribes certain felony convictions from being so used. It states, in part:

> What constitutes a conviction of such a crime
> shall be determined in accordance with the law
> of the jurisdiction in which the proceedings
> were held. Any conviction ... for which a
> person ... has had civil rights restored shall

3

> *not* be considered a conviction for purposes of
> this chapter, *unless* such pardon, expungement,
> or *restoration of civil rights expressly
> provides* that the person may *not* ship,
> transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20) (emphasis added).

Chenowith contends a Final Release and Restoration certificate from the Ohio Adult Parole Authority, effective 1 November 1978, restored his civil rights. Stating that, "[s]ince being granted a parole from the institution, [Chenowith] ha[d] conducted [him]self satisfactorily as demonstrated by [his] conduct and ability", it restored, pursuant to "the Authority of the Section 2967.16 [granted to] the Adult Parole Authority[,] ... the rights and privileges forfieted [sic] by [his] conviction; namely, the right to vote if ... otherwise eligible, to serve on juries and to hold public office". As noted, the certificate was expressly granted pursuant to Ohio law, § 2967.16; in 1978, the statute stated in relevant part:

> When a paroled prisoner has *faithfully
> performed* the conditions and obligations of
> his parole and has obeyed the rules and
> regulations adopted by the adult parole
> authority that apply to him, the authority
> upon the recommendation of the superintendent
> of parole supervision *may* enter upon its
> minutes a final release and thereupon shall
> issue to the paroled prisoner a *certificate of
> final release, but no such release shall be
> granted earlier than one year after the
> prisoner is released from the institution on
> parole* unless his maximum sentence has expired
> prior thereto, and in the case of a prisoner

4

> whose minimum sentence is life imprisonment, no such release shall be granted earlier than five years after the prisoner is released from the institution on parol.
>
> A prisoner who has served the maximum term of his sentence or who has been granted his final release by the adult parole authority shall be restored to the rights and privileges forfeited by his conviction.

OHIO REV. CODE ANN. § 2967.16(A) (1974) (emphasis added).

Our court undertakes a two-pronged inquiry to determine whether the restoration of rights disqualifies a prior felony conviction from serving as the felon-in-possession predicate offense. **United States v. Osborne**, 262 F.3d 486, 489 (5th Cir. 2001); *see* **United States v. Thomas**, 991 F.2d 206, 213 (5th Cir.) ("[r]emaining faithful to the Ninth Circuit's two-step approach" in **United States v. Gomez**, 911 F.2d 219, 221 (9th Cir. 1990)), *cert. denied*, 510 U.S. 1014 (1993). First, we consider whether Chenowith's civil-rights restoration was sufficient to meet the requirements of § 921(a)(20). **Thomas**, 991 F.2d at 211, 213; *see* **Osborne**, 262 F.3d at 489 (asking whether, by individual certification or operation of law, "essentially all civil rights" were restored (internal citation omitted)). Second, if such rights were restored sufficiently, we examine whether he "was nevertheless *expressly* deprived of the right to possess a firearm by some provision of the restoration law or procedure of the state of the

5

underlying conviction". *Thomas*, 991 F.2d at 213 (emphasis in original).

## A.

For determining whether civil rights have been sufficiently restored, our court has held: "[I]f, upon release from prison, the suspension of a convicted felon's rights to, inter alia, vote, hold public office, and sit on a jury evaporates ... such felon's civil rights have been restored for purposes of § 921(a)(20)". *Id*. at 212-13. Because Chenowith's final-release certificate restored each of these three rights, his civil rights were sufficiently restored for purposes of § 921(a)(20). *See id.; see also United States v. Bost*, 87 F.3d 1333, 1335 (D.C. Cir. 1996) ("It is generally agreed that the 'civil rights' referred to in section 921(a)(20) are the rights to vote, to hold elective office, and to serve on a jury." (citing *United States v. Caron*, 77 F.3d 1, 2 (1st Cir. 1996); *United States v. Cassidy*, 899 F.2d 543, 549 (6th Cir. 1990); and *Thomas*, 991 F.2d at 212-13)).

## B.

As discussed, because Chenowith's civil rights were restored sufficiently, we next "determine whether [he] was nevertheless *expressly* deprived of the right to possess a firearm by some provision of the restoration law or procedure of the state of the underlying conviction". *Thomas*, 991 F.2d at 213 (emphasis in

6

original).  Circuit courts are divided regarding whether, for this second inquiry, we look *only to the certificate of restoration* to decide if it expressly limits Chenowith's rights with regard to firearms, or whether we look to *all of Ohio statutory law* to decide if *any* statute prohibits convicted felons from possessing firearms. *See* **Bost**, 87 F.3d at 1335 (stating the Seventh, Ninth, and this circuit adhere to the former approach; the Fourth, Sixth, and Tenth, the latter).  Along this line, Ohio law provides:  "[N]o person shall knowingly acquire, have, carry, or use any firearm" while under disability, including having previously "been convicted of any felony offense of violence".  OHIO REV. CODE ANN. § 2923.13.

Although our court has never squarely considered the situation where a defendant's civil rights were restored affirmatively by certificate, rather than by operation of law, we at least contemplated such a scenario in **Thomas**, 991 F.2d at 209-16.  *See* **Daugherty**, 264 F.3d at 516 n.5 ("This circuit has considered only situations in which the defendant's civil rights were passively restored by operation of state law." (citing **Thomas** and **United States v. Dupaquier**, 74 F.3d 615, 617-19 (5th Cir. 1996))).  **Thomas** considered whether the defendant was nevertheless expressly prohibited from possessing a firearm, distinguishing between restoration of civil rights by operation of law and "an affirmative or active restoration (with certificate)".  991 F.2d at 213.

7

Regarding active restoration, *Thomas* agreed with the Seventh Circuit:

> "If the state sends the felon a piece of paper [or certificate] implying that he is no longer 'convicted' and that *all* civil rights have been restored, a reservation in a corner of the state's penal code can not be the basis of a federal prosecution. A state must tell the felon [point blank] that [firearms] are not kosher."

*Id.* (first and third alterations and emphasis in original; second alteration in *Erwin*) (quoting *United States v. Erwin*, 902 F.2d 510, 512-13 (7th Cir.), *cert. denied*, 498 U.S. 859 (1990)).

Chenowith's civil rights were restored by his final-release-and-restoration certificate, *not* by operation of law. Although the Government contends his rights were restored automatically, his certificate was granted, as discussed, under the *discretionary authority* provided by § 2967.16. As quoted earlier, it states, in part: "[T]he [Ohio Adult Parole Authority,] *upon the recommendation* of the superintendent of parole supervision[,] *may* enter ... a final release and thereupon shall issue to the paroled prisoner a certificate of final release". OHIO REV. CODE ANN. § 2967.16(A) (emphasis added). Chenowith's restoration of rights was *not* automatic.

The Government also asserts § 2961.01 of Ohio's Revised Code supports its contention that Chenowith's rights were restored by

8

operation of law.  That statute, however, merely states a convicted felon may not vote, serve on a jury, or hold office in Ohio, but that the convicted felon may vote following his final discharge.  OHIO REV. CODE ANN. § 2961.01.

In **Bost**, 87 F.3d at 1335, the D.C. Circuit considered both of the above Ohio statutes, concluding Bost's rights were restored in 1982 by a combination of certificate and operation of law.  Section 2961.01 restored his right to vote upon receiving a final discharge; his certificate under § 2967.16 expressly restored his rights to hold office and serve on a jury.  OHIO REV. CODE ANN. §§ 2961.01 and 2967.16; *see* **Bost**, 87 F.3d at 1334 (quoting the certificate as restoring "the right to serve on juries and to hold office of honor, trust, or profit", while noting the "right to vote was restored automatically by statute").  In addition, **Bost** noted that, although § 2923.13 "prohibits convicted felons from possessing, acquiring, or using firearms", § 2923.14 nevertheless "prescribes the procedures by which state firearm privileges may be restored".  87 F.3d at 1336 (citing OHIO REV. CODE ANN. §§ 2923.13 and 2923.14).  Because neither § 2961.01 (which restored the right to vote) nor § 2967.16 (under which the certificate restored the right to serve on a jury and hold office) imposed a restriction on a convicted felon's possessing a firearm, however, the court concluded Bost recovered his rights "through a combination of sources that d[id] not expressly restrict his rights with respect

9

to firearms"; accordingly, the felony at issue could *not* serve as the felon-in-possession predicate offense. *Id*. at 1337.

It is unknown why Bost's certificate did not restore all three rights, as authorized by § 2967.16. In any event, its failure to do so has no bearing on the disposition of the issue at hand. Here, Chenowith's civil rights being restored pursuant to certificate, *not by operation of law*, is even stronger than in **Bost**, where the certificate restored only the rights to serve on juries and hold office. *Id*. at 1336. As discussed, Chenowith's certificate restored all three rights.

Furthermore, Chenowith's certificate is silent regarding possessing firearms. This is significant because, as quoted earlier, § 921(a)(20)'s plain language provides that a conviction for which a person's civil rights have been restored shall *not* serve as the predicate offense "*unless* such ... restoration of civil rights *expressly* provides that the person may *not* ship, transport, possess, or receive firearms". 18 U.S.C. § 921(a)(20) (emphasis added). Therefore, consistent with the D.C., Seventh, and Ninth Circuits, we construe this language to mean we "may look no further than the source of the restoration of ... civil rights to see whether ... gun-related rights have been restricted". **Bost**, 87 F.3d at 1336; *see* **United States v. Herron**, 45 F.3d 340, 343 (9th Cir. 1995) (holding Congress has instructed to look at the

10

certificate of restoration for whether there is a firearm restriction, *not all state law*); *United States v. Glaser*, 14 F.3d 1213, 1218 (7th Cir. 1994) ("When the state gives the person a formal notice of restoration of civil rights, ... the final sentence of § 921(a)(20) instructs us to look, not at the contents of the state's statute books but at the contents of the document."). *But see Cassidy*, 899 F.2d at 549-50 (looking "to the whole of [Ohio] law", regardless of whether the restoration was by certificate or operation of law, and concluding the earlier-referenced Ohio Revised Code § 2923.13 expressly prohibited Cassidy from possessing a firearm); *see also United States v. Burns*, 934 F.2d 1157, 1160 (10th Cir. 1991) (following *Cassidy*), *cert. denied*, 502 U.S. 1124 (1992); *United States v. McLean*, 904 F.2d 216, 218 (4th Cir.) (same), *cert. denied*, 498 U.S. 875 (1990). *But see Thomas*, 991 F.2d at 210 n.20 (noting this court's "lingering doubts" regarding the Sixth Circuit's holding in *Cassidy*, particularly "[c]onsidering the 'expressly provides' language pointed to by the *Erwin* court").

This interpretation comports with § 921(a)(20)'s plain language. Therefore, we decline to follow *Cassidy's* reliance on § 921(a)(20)'s legislative history. *See Bost*, 87 F.3d at 1336 ("A resort to legislative history is uncalled for ... because [§ 921(a)(20)'s] instructions are clear.").

Because the certificate is the source of Chenowith's civil-rights restoration, and because it does *not expressly prohibit* his possessing firearms, the district court erred in denying his motion to dismiss his indictment. *See **id**.* at 1338 (holding "[b]ecause neither the certificate nor the statute [of Ohio civil-rights restoration] contain[ed] any language expressly limiting [the] right to possess a firearm, ... [defendant was] not subject to prosecution under section 922(g)").

## III.

For the foregoing reasons, Chenowith's conviction and sentence are **VACATED** and this matter is **REMANDED** to district court with instructions to dismiss the indictment.

*VACATED AND REMANDED*