# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 06-2958

SHANE BUCHMEIER,

*Petitioner-Appellant*,

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 1463—**Joan B. Gottschall**, *Judge*.

ARGUED MARCH 5, 2008—DECIDED SEPTEMBER 10, 2009

Before EASTERBROOK, *Chief Judge*, and POSNER, MANION, KANNE, ROVNER, WOOD, EVANS, WILLIAMS, SYKES, and TINDER, *Circuit Judges*.[†]

EASTERBROOK, *Chief Judge*. Shane Buchmeier was sentenced as an armed career criminal following four firearms convictions: two for possessing firearms despite

---

[†] Circuit Judge Flaum did not participate in the consideration or decision of this case.

a prior felony conviction, 18 U.S.C. §922(g)(1), and two for receiving stolen firearms, §922(j). His sentence of 188 months' imprisonment is within the 480-month maximum for these crimes. (Each conviction carries a maximum sentence of 10 years, §924(a)(2).) But the armed career criminal enhancement set a floor of 180 months, §924(e), and without it Buchmeier might have received a sentence in the Guideline range of 121 to 151 months that would have applied, but for the enhancement.

We affirmed Buchmeier's conviction and sentence on direct appeal. 255 F.3d 415 (7th Cir. 2001). He then filed a collateral attack under 28 U.S.C. §2255, contending that his lawyer had furnished ineffective assistance by failing to contest the recidivist enhancement. The prosecutor might have replied that solitary errors in the course of an otherwise vigorous and competent defense rarely violate the sixth amendment. See *Strickland v. Washington*, 466 U.S. 668, 695–96 (1984); *Williams v. Lemmon*, 557 F.3d 534 (7th Cir. 2009). Instead of making such a riposte, however, the prosecutor defended the §924(e) enhancement on the merits. The United States thus has forfeited, if it has not waived, any contention that the overall performance of Buchmeier's lawyer was adequate; it has effectively consented to treating this collateral attack as a rerun of the direct appeal. Given the parties' litigating positions, we proceed to examine the propriety of the recidivist enhancement, without asking whether counsel furnished ineffective assistance. That issue has never been contested, and we cannot tell how things would have come out on a complete analysis under *Strickland*.

Section 924(e) requires a lengthy sentence for anyone who violates §922(g) after three convictions for violent felonies or serious drug crimes. Section 924(e)(2)(B) lists the offenses that count as violent felonies. Each must be "punishable by imprisonment for a term exceeding one year" and meet other conditions. One qualifying offense is burglary, and Buchmeier has eight of these on his rap sheet. He now maintains that they do not count because of 18 U.S.C. §921(a)(20):

> The term "crime punishable by imprisonment for a term exceeding one year" does not include—
>
> > (A) any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices, or
> >
> > (B) any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less.
>
> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

The hanging paragraph's first sentence tells us that state law governs "[w]hat constitutes a conviction". This countermands *Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103 (1983), which had held that federal law defines "conviction" and that a diversionary disposition in state court is one. The first sentence also means that a pardon or automatic expungement under state law is effective for federal purposes. The hanging paragraph's second sentence is a proviso to the first. It tells us that, no matter what state law provides, a person who has received a "pardon, expungement, or restoration of civil rights" is not treated as convicted for federal purposes "unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms."

Buchmeier relies on the hanging paragraph's second sentence. When his state terms expired, and he was released from all supervision, he received from the Illinois Department of Corrections a notice (applicable to all eight burglaries) reading:

> We have been advised by the field services office of the Stateville Correctional Center that you have completed the maximum of your sentence as of 02/09/1994. On this date, your obligation to the department ceases.

> We are pleased to inform you of the restoration of your right to vote and to hold offices created under the constitution of the state of Illinois. You also have the right to restoration of licenses granted to you under the authority of the state of

> Illinois if such license was revoked solely as a result of your conviction, unless the licensing authority determines that such restoration would not be in the public interest.

Buchmeier contends that this notice is a "restoration of civil rights" and that, because it does not provide that he "may not ship, transport, possess, or receive firearms", none of the eight burglary convictions meets the definition of a "crime punishable by imprisonment for a term exceeding one year". With these eight convictions erased, Buchmeier no longer has three convictions for violent felonies and cannot properly be sentenced under §924(e) as an armed career criminal.

Section 921(a)(20) does not say *which* civil rights, if restored, cause a state conviction not to count. We concluded in *United States v. Williams*, 128 F.3d 1128, 1134 (7th Cir. 1997), that three civil rights matter: the rights to vote, to hold office, and to serve on juries. If these are restored, then a conviction does not carry federal firearms disabilities or support a §924(e) enhancement "unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." The document that Buchmeier received mentions only two of the three civil rights; it is silent about jury service. As this civil right has not been restored (at least, Buchmeier was not told about its restoration), the district court held that the eight burglary convictions still count for federal purposes. In reaching this conclusion, it relied entirely on *United States v. Gillaum*, 372 F.3d 848, 859–61 (7th Cir.

2004), which holds that, when a pardon, expungement, or other restoration of rights omits one of the "big three" civil rights, there is no need for a firearms reservation. In *Gillaum* the notice said that "rights to vote and administer estates are regained." Nothing there about the right to hold public office or to serve on juries, so Gillaum's convictions still counted for federal recidivist enhancements.

It does not follow from *Gillaum*, however, that a notice counts as a "pardon, expungement, or restoration of civil rights" only if it mentions all three civil rights. Pardons often are unconditional ("full, free, and absolute"); they don't mention any particular rights but come within §921(a)(20) because they restore *all* civil rights, unless they contain a reservation—and the second sentence of the hanging paragraph says that a firearms reservation must be mentioned expressly. More to the point, there is no need to notify a defendant that a given civil right has been restored, unless it was first taken away. A felony conviction in Illinois suspends a person's right to vote and hold many public offices until the sentence has expired; then these rights are restored automatically. 730 ILCS 5/5-5-5(b), (c). The right to serve on juries, by contrast, is not suspended—though as a practical matter it can't be exercised while a person is in prison. The notice Buchmeier received did not mention his right to serve on juries, because he had never lost it. This means, Buchmeier observes, that when his sentence ended he could again exercise all three of the civil rights commonly lost with a felony conviction. And, as the notice informing him of the rights' restoration did not mention

a firearms disability, the eight burglary convictions are removed from the federal calculus.

*Logan v. United States*, 128 S. Ct. 475 (2007), holds that, if a person never loses *any* of the "big three" civil rights, then they cannot be "restored" for the purpose of the hanging paragraph's second sentence. To restore means to give back. Thus a person who never lost civil rights cannot insist that he be treated the same as a person who lost them, had them restored, and did not receive an "express" warning that the right to possess firearms had not been restored. But Buchmeier did lose civil rights; they could be, and were, "restored" to him; and the document announcing this restoration could have contained (but lacked) a warning that he must not possess firearms. Illinois law forbids felons to possess firearms, unless the Director of the State Police grants a dispensation. 720 ILCS 5/24-1.1(a). Buchmeier's convictions have not been set aside, so this rule applies, though it was not mentioned in the notice telling Buchmeier that his civil rights had been restored.

Questioning by the panel at oral argument implied to counsel that neither *Logan* nor *Gillaum* supports Buchmeier's §924(e) enhancement. And because, under this circuit's decisions, the "express" notice must be in the document informing the convict of the pardon, expungement, or restoration of civil rights, rather than in the state's statutes at large, the enhancement appeared to be infirm. See, e.g., *United States v. Erwin*, 902 F.2d 510 (7th Cir. 1990); *United States v. Glaser*, 14 F.3d 1213, 1218 (7th Cir. 1994); *Dahler v. United States*, 143 F.3d 1084,

1086–87 (7th Cir. 1998); *United States v. Vitrano*, 405 F.3d 506, 509–10 (7th Cir. 2005). Four other circuits agree with *Erwin*, though a further four disagree and hold that an "express" firearms restriction anywhere in the state's statutes suffices for the hanging paragraph's second sentence. Compare *United States v. Chenowith*, 459 F.3d 635 (5th Cir. 2006); *United States v. Gallaher*, 275 F.3d 784 (9th Cir. 2001); *United States v. Fowler*, 198 F.3d 808 (11th Cir. 1999); and *United States v. Bost*, 87 F.3d 1333 (D.C. Cir. 1996) (all following *Erwin*), with *United States v. McLean*, 904 F.2d 216 (4th Cir. 1990); *United States v. Cassidy*, 899 F.2d 543 (6th Cir. 1990); *United States v. Collins*, 321 F.3d 691 (8th Cir. 2003); and *United States v. Burns*, 934 F.2d 1157 (10th Cir. 1991). See also *Logan*, 128 S. Ct. at 482–83 n.4 (noting the conflict's existence).

We gave counsel an opportunity to file post-argument briefs to discuss whether this circuit should change sides in the conflict. The United States filed a brief asking us to overrule *Erwin* and its successors. The panel prepared an opinion that was circulated to the full court under Circuit Rule 40(e). A majority of the judges in active service voted to hear the appeal en banc in order to address the status of *Erwin*.

Overruling would not be consistent with a proper regard for the stability of our decisions. *Erwin* was issued 19 years ago and, though its discussion of §921(a)(20) can be characterized as dictum, its approach became a holding at the first opportunity (*Glaser*) and has been followed ever since. Precedents are not sacrosanct; we have overruled many. But when the issue is closely bal-

anced (the 5 to 4 division among the circuits reveals at least that much), there is less reason to think that a shift will undo rather than create an error. What is more, no circuit can resolve the question with finality. Only Congress or the Supreme Court can accomplish that. When one circuit's overruling would convert a 5–4 conflict into a 4–5 conflict, it is best to leave well enough alone. As so often, it is better that the question "be settled, than that it be settled right*." John R. Sand & Gravel Co. v. United States*, 128 S. Ct. 750, 757 (2008), quoting from *Burnet v. Coronado Oil & Gas Co.*, 285 U.S. 393, 406 (1932) (Brandeis, J., dissenting). "To overturn a decision settling one such matter simply because we might believe that decision is no longer 'right' would inevitably reflect a willingness to reconsider others. And that willingness could itself threaten to substitute disruption, confusion, and uncertainty for necessary legal stability." 128 S. Ct. at 757.

Any one circuit's restless movement from one side of a conflict to another won't reduce the workload of the Supreme Court. Yet changing sides in one conflict will telegraph a propensity to change sides in others, and that message will induce conscientious lawyers to argue for overruling of circuit precedent whenever there is a conflict. Almost all such requests will prove to be unavailing—for, even apart from *stare decisis*, the fact that a court has reached a conclusion once implies that it will do so again. Litigants rarely would benefit by diverting lawyers' time away from arguments that make the best of circuit law and toward arguments for a change in circuit law. That's why it takes more than argument that a decision is mistaken to justify overruling. See *Tate v.*

*Showboat Marina Casino Partnership*, 431 F.3d 580 (7th Cir. 2005).

Overruling circuit law can be beneficial when the circuit is an outlier and can save work for Congress and the Supreme Court by eliminating a conflict. Even when an overruling does not end the conflict, it might supply a new line of argument that would lead other circuits to change their positions in turn. Finally, overruling is more appropriate when prevailing doctrine works a substantial injury. None of these indicators is present, however. A 5–4 conflict will remain no matter what we do. The United States has not produced a new argument; it simply asks us to agree with a position that was first articulated by the sixth circuit in 1990, and that five circuits already have found wanting. And no one contends that *Erwin* causes a serious, ongoing harm; quite the contrary, its understanding of §921(a)(20) protects people who might be snookered, by material omissions from governmental documents, into believing that they are *entitled* to possess firearms.

*Erwin* and its successors treat the second sentence of the hanging paragraph as an anti-mousetrapping provision. On this view the hanging paragraph's first sentence refers to state law for the basic definition of a "conviction," while the second sentence is a federal proviso: Even if a state deems a person "convicted" for purposes of its domestic law, if it sends a document that seems to restore all civil rights the conviction does not count for federal purposes unless the document warns the person about a lingering firearms disability. That is not the only possible

reading; four circuits treat the second sentence as an extension of the first sentence's reference to state law, and they look for the "express" reservation not in a document sent to the convicted person but in the whole of the state's statutes. Having given the view of these four circuits a fresh look, we do not think that *Erwin* is so clearly wrong that it must be interred despite the prudential considerations we have mentioned.

If, as the prosecutor contends, a judge must look to the whole of state law, why does the statute tell us to inquire what "such pardon, expungement, or restoration of civil rights expressly provides"? A "pardon" or "restoration of civil rights" differs from "the entirety of state law." Many states remove some convictions from a person's record, or restore some civil rights, after the passage of time, without the need for a pardon or other special dispensation. If a state does this without sending the ex-prisoner a notice, then the final sentence of §921(a)(20) does not require a firearms reservation; there is no document in which the reservation would be included, no risk that the ex-prisoner will be misled into thinking that he is entitled to possess firearms. But when the state does send a document saying that civil rights have been restored, there is a potential for misunderstanding unless the document "expressly provides that the person may not ship, transport, possess, or receive firearms." *Erwin* gives effect to the entirety of the statute's final sentence; the prosecutor's approach does not, treating the sentence as if it read: "Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be

considered a conviction for purposes of this chapter, unless [state law] expressly provides that the person may not ship, transport, possess, or receive firearms." Replacing "such pardon, expungement, or restoration of civil rights" with "state law" changes the meaning.

Illinois sent Buchmeier a poorly written document. It neglected to inform him that, though the expiration of his sentence restored his rights to vote and hold "constitutional" offices such as Governor, other rights, including entitlement to possess firearms, were not restored. The notice also did not mention that Illinois does not automatically restore a felon's right to hold statutory offices, such as mayor. But the United States has not argued that this omission is significant, so we need not decide whether a firearms reservation is essential in a notice announcing the restoration of the civil right to hold constitutional, but not statutory, public offices.

If someone asks Buchmeier "have you been convicted of a felony?" he must answer "yes"; restoration of civil rights differs from expungement as a matter of Illinois law. But because the state sent Buchmeier a document stating that his principal civil rights have been restored, while neglecting to mention the continuing firearms disability, the final sentence of §921(a)(20) means that his burglary convictions do not count for federal purposes. He is entitled to be resentenced.

VACATED AND REMANDED

SYKES, *Circuit Judge*, with whom MANION, EVANS, and TINDER, *Circuit Judges*, join, dissenting. Shane Buchmeier served time in an Illinois prison for eight felony burglary convictions and successfully completed a term of parole supervision. Six months later he purchased several guns stolen from the home of an unsuspecting vacationer. For this he was convicted in federal court of two counts of possession of a firearm by a felon, *see* 18 U.S.C. § 922(g)(1), and two counts of receiving stolen firearms, *see id.* § 922(j). As my colleagues explain, Buchmeier's sentence was enhanced under the Armed Career Criminal Act ("ACCA") based on his Illinois burglary convictions; his sentence of 188 months was eight months longer than the mandatory minimum under the ACCA and well above the advisory sentencing guidelines range that would have applied if his burglary priors weren't counted. After losing his direct appeal, he brought this collateral attack under 28 U.S.C. § 2255 claiming his lawyer was ineffective for failing to challenge the application of the ACCA recidivist enhancement.

The ACCA mandates a prison term of not less than fifteen years for a felon who possesses a firearm after accumulating three or more convictions for a serious drug offense or a violent felony. *See* 18 U.S.C. § 924(e)(1). A "violent felony" is a crime that: (1) is "punishable by imprisonment for a term exceeding one year," *id.* § 924(e)(2)(B); and (2) has certain other, specific qualifying characteristics relating to the use of physical force or risk of physical injury to a person, *see id.* § 924(e)(2)(B)(i), (ii). Buchmeier's burglary convictions qualify as violent

felonies. *See id*. § 924(e)(2)(B)(ii). But not every felony conviction that otherwise qualifies under § 924(e)(2)(B) counts—either for the enhanced penalties laid out in § 924(e)(1) *or* for a substantive felon-in-possession offense under § 922(g)(1), which also uses the "term exceeding one year" definition of "felony." This case concerns the exemption contained in § 921(a)(20):

> The term "crime punishable by imprisonment for a term exceeding one year" does not include—
>
> > (A) any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices, or
> >
> > (B) any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less.
>
> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. *Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.*

18 U.S.C. § 921(a)(20) (emphasis added).

Subsections (A) and (B) of § 921(a)(20) exclude certain types of crimes and are not at issue here. The first sentence of the hanging paragraph after subsections (A) and (B) straightforwardly tells us to use the law of the convicting jurisdiction (state *or* federal) to determine whether a particular conviction counts. The second sentence of that paragraph—exempting convictions that have been ex-punged or for which a person has been pardoned or has had civil rights restored—is less clear and has spawned conflicting interpretations among the circuit courts. Buchmeier's argument rests on the "unless" clause of the second sentence.

As my colleagues note, this circuit has read the "unless" clause in the second sentence as a "notice" or "anti-mousetrapping" provision. *See, e.g.*, *United States v. Vitrano*, 405 F.3d 506, 509-10 (7th Cir. 2005); *United States v. Gillaum*, 372 F.3d 848, 860-61; *Dahler v. United States*, 143 F.3d 1084, 1086-87 (7th Cir. 1998); *United States v. Glaser*, 14 F.3d 1213, 1218 (7th Cir. 1994); *United States v. Erwin*, 902 F.2d 510, 512 (7th Cir. 1990). On this under-standing, if the jurisdiction of conviction—in most cases a state—issues a certificate or other notice to the offender announcing a pardon, expungement, or restora-tion of his civil rights, the contents of the certificate or notice control the question whether the exemption ap-plies. That is, in cases in which the defendant received documentary notice of a restoration of his civil rights, we have looked no further than the document itself to determine whether the offender's civil rights have been restored and, if so, whether the notice con-tained a reference to a continuing firearms prohibition.

This "notice" interpretation of § 921(a)(20) first appeared in *Erwin*, 902 F.2d 510, which concerned the question "whether a felon whose 'civil rights' were restored automatically at the end of his sentence—but who under state law may not own a gun—stands convicted of a crime for purposes of 18 U.S.C. § 921(a)(20)." *Id.* at 511. Erwin argued that an Illinois statute that suspends the right to vote for prison inmates and forbids felons from holding some state offices until they have completed their sentence unwound his status as a convicted felon for federal purposes even though Illinois still considered him a felon and elsewhere in its statutes prohibited felons from possessing guns. *Id.* at 512. Erwin reasoned that the statute that restored his civil rights automatically did not in the same text expressly prohibit him from possessing a firearm, so the "unless" clause of § 921(a)(20) wasn't triggered. *Id.* We thought this was too great a stretch for a federal statute "that is designed to require federal rules to track state law." *Id.* We offered this explanation:

> When state law deems a person convicted, that is dispositive for federal purposes under the first sentence of § 921(a)(20). *United States v. Cassidy*, 899 F.2d 543 (6th Cir. 1990). The second sentence [of § 921(a)(20)] does not require a federal court to disregard the state's definition of a conviction just because the state has restored any one civil right. . . . The second sentence of § 921(a)(20) is an anti-mousetrapping rule. If the state sends the felon a piece of paper implying that he is no longer "convicted" and that *all* civil rights have been

restored, a reservation in a corner of the state's penal code can not be the basis of a federal prosecution. A state must tell the felon point blank that weapons are not kosher. The final sentence of § 921(a)(20) can not logically mean that the state may dole out an apparently-unconditional restoration of rights yet be silent so long as any musty statute withholds the right to carry guns. Then the state never would need to say a peep about guns; the statute would self-destruct. It must mean, therefore, that the state sometimes must tell the felon that under state law he is not entitled to carry guns, else § 922(g) does not apply. To the extent *Cassidy* suggests otherwise, at 545 n. 5, we have doubts, although the question need not be resolved today. When, however, the state sends no document granting pardon or restoring rights, there is no potential for deception, and the question becomes whether the particular civil right to carry guns has been restored by law. . . . Illinois does not allow Erwin to possess guns, and that is that.

*Id.* at 512-13.

*Erwin* did not involve a state-issued notice, so this anti-mousetrapping discussion was dicta. In *United States v. Glaser*, 14 F.3d at 1215-16, however, we returned to the subject in a case where there *was* a notice. *Glaser* involved a felon who had twice received a state-issued document notifying him of the return of "all civil rights and to full citizenship, with full right to vote and hold

public office, the same as if such conviction had not taken place." *Id.* at 1215. By state statute, however, he remained under a firearms disability. We repeated our explanation from *Erwin* that typically "it is necessary to examine the whole of state statutory law to determine whether the state treats [a felon] as 'convicted' for the purpose of possessing firearms." *Id.* at 1218. We went on, however, to elevate the anti-mousetrapping dictum from *Erwin* to a holding: "When the state gives the person a formal notice of the restoration of civil rights, . . . the final sentence of § 921(a)(20) instructs us to look, not at the contents of the state's statute books but at the contents of the document." *Id.* Because the written notices Glaser received announced that his civil rights were restored but omitted any reference to the statutory firearms prohibition, his prior convictions did not count for ACCA purposes. *Id.* at 1218-19.

Three months later, in *United States v. McKinley*, 23 F.3d 181, 183 (7th Cir. 1994), we identified the rights to vote, to hold public office, and to serve on a jury as the "civil rights" contemplated by § 921(a)(20); the loss or return of other privileges is irrelevant. *See also United States v. Williams*, 128 F.3d 1128, 1134-35 (7th Cir. 1997); *Roehl v. United States*, 977 F.2d 375, 377-78 (7th Cir. 1992). *Glaser* and *Erwin* worried about felons being mousetrapped by an "apparently unconditional" document—with language, as in *Glaser*, that communicates the restoration of *all* civil rights. *See also Dahler*, 143 F.3d at 1086-88. Extrapolating from *McKinley* and *Williams,* we held in *Gillaum* that a state-issued document does not implicate the mousetrap principle if it tells the recipient

he has regained fewer than all three core civil rights: the rights to vote, to hold public office, and to serve on a jury. 372 F.3d at 860-62.

On the strength of these precedents, Buchmeier claimed in his § 2255 petition that he was mousetrapped. The document he received upon his discharge from parole mentioned the restoration of certain civil rights but contained no express notice of a firearms prohibition. He did not suggest that he was actually deceived by the document or that Illinois no longer considers him a felon—for purposes of its firearms prohibition or otherwise. He argued instead that the discharge document removed his burglary convictions from consideration under § 921(a)(20) and he has no others. In response the government asserted that the document Buchmeier received evidenced only a partial restoration of civil rights and thus could not have mousetrapped him. The notice merely alerted him that he had regained his rights to vote and to hold certain offices, nothing more. Therefore, the government argued, Buchmeier's circumstances were not the same as the unwary felon who learns through a state-issued document that *all* of his civil rights (or even just the three core rights) have been restored. *See, e.g., Dahler*, 143 F.3d at 1086-88 (applying *Erwin* and *Glaser*).

The district court sided with the government and denied Buchmeier's § 2255 motion. Relying heavily on *Gillaum*, 372 F.3d at 859-61, the court concluded that the recipient of a document telling him that rights lost upon conviction have been regained cannot be mousetrapped

or misled into believing he may possess firearms unless the document communicates, at a minimum, the return of the rights to vote, to hold public office, and to serve on a jury. And, the court reasoned, just as the document received by the defendant in *Gillaum* told him that he had regained fewer than the three core civil rights (in that case, only the right to vote), so too did Buchmeier's document fail to trigger the § 921(a)(20) exemption because it "restored" only his rights to vote and hold certain offices but not his right to serve on a jury.

Buchmeier appealed, reiterating his argument that the document he received after completing his parole "substantially restored" his civil rights but did not contain a firearms warning and for that reason he should not have been sentenced as an armed career criminal.[1]

---

[1]  Buchmeier's argument has a much wider reach than he seems to appreciate. If, as Buchmeier contends, his Illinois burglary convictions do not satisfy § 921(a)(20)'s definition of a felony conviction, he would not be subject to the fifteen-year mandatory-minimum sentence of § 924(e)(1). But the same basic definition of a felony (a "crime punishable by imprisonment for a term exceeding one year") also governs § 922(g)(1) (prohibiting a felon from possessing a firearm). *See Logan v. United States*, 128 S. Ct. 475, 479 (2007); *Caron v. United States*, 524 U.S. 308, 312 (1998); *Roehl*, 977 F.2d at 378. Understood in this light, Buchmeier's petition is not just a challenge to his designation as an armed career criminal, but more fundamentally a collateral attack on his § 922(g)(1) convictions. *See Roehl*, 977 F.2d at 378; *see also United States v. Chenowith*, 459 F.3d 635, 636-

(continued...)

He noted first that the document explicitly states that his right to vote had been restored. *See* 730 ILL. COMP. STAT. 5/5-5-5(c) (2008) ("A person sentenced to imprisonment shall lose his right to vote until released from imprisonment."). As for his right to hold public office, Buchmeier observed that the document also states that he regained his right to "hold offices created under the Constitution of the State of Illinois." Though at first blush this description of the offices he could hold suggests only a partial restoration—there are *nonconstitutional* elective offices in Illinois—Buchmeier argued that under state law he lost only the right to hold the offices alluded to in the document. Similarly, Buchmeier argued that he never lost his right to serve on a jury under Illinois law, *see* 730 ILL. COMP. STAT. §§ 5/5-5-5(a), 305/2(b), and thus "restoration" of that right was both impossible and unnecessary.

The government maintained, as it did in the district court, that "Buchmeier's letter was not a mousetrap" because "[t]he restoration of certain, but not all, rights, by letter or by statute, is insufficient to trigger the protections of 18 U.S.C. § 921(a)(20)." Buchmeier's document also conveyed that state-licensing authorities would have to decide independently whether he should regain "licenses granted . . . under the authority of the State of

---

[1] (...continued)
40 (5th Cir. 2006); *United States v. Nix*, 438 F.3d 1284, 1285-88 (11th Cir. 2006); *United States v. Leuschen*, 395 F.3d 155, 156-60 (3d Cir. 2005).

Illinois if such license was revoked solely as a result of your conviction," and that requirement, according to the government, demonstrates that "Buchmeier's letter could not have lulled him into the misapprehension that all of his rights had been restored." As for Buchmeier's argument about the rights he never lost, the government argued that *Logan v. United States*, 128 S. Ct. 475 (2007), decided after this case was briefed but before oral argument, is controlling. As my colleagues note, *Logan* held that the § 921(a)(20) exemption "does not cover the case of an offender who retained civil rights at all times, and whose legal status, postconviction, remained in all respects unaltered by any state dispensation." *Id.* at 479.

With his theory of mousetrapping by a document announcing "substantial" restoration of civil rights, Buchmeier essentially invites us to extend the reach of *Erwin* and *Glaser*—that is, to extend the anti-mouse-trapping doctrine to cover every felon who receives a document telling him not that *all* civil rights have been regained, but that less than all of the core rights lost have been reinstated and where (at least) one was never lost in the first place. But to know which core rights were lost and which not, Buchmeier must turn to state law; his document says nothing about his rights to serve on a jury or hold nonconstitutional office. At this point the mousetrapping theory falls apart: If a felon has to consult state statutes to determine whether certain core rights were always or are presently intact, why not look up gun privileges as well? The parties' labyrin-thine arguments test the premise of our anti-mousetrapping doctrine and illustrate just how compli-

cated its application can be. This suggests to me that fresh scrutiny of our interpretation of § 921(a)(20) is appropriate.

But first, it makes sense to note the genesis of the circuit split on the § 921(a)(20) exemption. The Sixth Circuit was the first to speak on this subject in *United States v. Cassidy*, 899 F.2d 543 (6th Cir. 1990). After discharging a state sentence in 1984 for trafficking in marijuana, Calvin Cassidy received a "Restoration to Civil Rights" certificate from the Ohio Adult Parole Authority. *Id.* at 544. That certificate documented the return of "the rights and privileges forfeited by [his] conviction; namely the right to serve on juries and to hold office of honor, trust, or profit." *Id.* (alteration in original). Five years later Cassidy was charged in federal court with possessing a firearm following a felony conviction, *see* 18 U.S.C. § 922(g)(1), and making a false statement to a firearms dealer, *see id.* § 922(a)(6). *Cassidy*, 899 F.2d at 544. The district court dismissed the indictment after holding that Cassidy's certificate constituted a "restoration of civil rights" and that under § 921(a)(20) his status as a convicted felon for § 922(g)(1) purposes was wiped out. *Id.* at 545.

On appeal the Sixth Circuit observed that "[i]t was the unmistakable intent of Congress to eliminate the disabling effect of a felony conviction when the state of conviction has made certain determinations, embodied in state law, regarding a released felon's civil rights and firearms privileges." *Id.* at 546. The harder question, the court wrote, is "whether Congress intended that a

court look only to the document, if any, tendered to a felon upon release to determine whether his civil rights have been restored and whether there is an express limitation upon his firearms privileges." *Id.* After reviewing the legislative history, the court concluded that "[i]t would frustrate the intent of Congress . . . to focus solely upon the document transferred to the convict upon release." *Id.* at 548. "The intent of Congress," the court explained, "was to give effect to state reforms with respect to the status of an ex-convict. A narrow interpretation requiring that we look only to the document, if any, evidencing a restoration of rights, would frustrate the intent of Congress that we look to the whole of state law, including state law concerning a convicted felon's firearms privileges." *Id.* Accordingly, the court held that

> if a "convicted felon" has his civil rights restored by operation of state law, with or without a certificate or order documenting the event, we must look to the whole of state law of the state of conviction to determine whether the "convicted felon" is entitled to vote, hold public office and serve on a jury and also whether the "convicted felon" is entitled to exercise the privileges of shipping, transporting, possessing or receiving a firearm.

*Id.* at 549.

*Erwin* was a response to *Cassidy*. We disagreed with *Cassidy*'s insistence on reference to the whole of state law in the face of a written notice, concluding that "[t]he final sentence of § 921(a)(20) can not logically mean that the state may dole out an apparently-uncondi-

tional restoration of rights yet be silent so long as any musty statute withholds the right to carry guns." *Erwin*, 902 F.2d at 513. That disagreement proliferated; as my colleagues note, the circuits are sharply divided on whether the "unless" clause of § 921(a)(20) implicates review of the whole of state law[2] or only the certificate of discharge or other notice of an offender's pardon, expungement, or restoration of civil rights. *Compare United States v. Chenowith*, 459 F.3d 635, 639-40 (5th Cir. 2006); *United States v. Gallaher*, 275 F.3d 784, 791-93 (9th Cir. 2001); *United States v. Fowler*, 198 F.3d 808, 811 (11th Cir. 1999); and *United States v. Bost*, 87 F.3d 1333, 1336-38 (D.C. Cir. 1996), *with United States v. Collins*, 321 F.3d 691, 698 (8th Cir. 2003); *United States v. Burns*, 934 F.2d 1157, 1160 (10th Cir. 1991); *United States v. McLean*, 904 F.2d 216, 218 (4th Cir. 1990); and *Cassidy*, 899 F.2d at 549. In *Logan* the Supreme Court noted the circuit split but took no position on it. 128 S. Ct. at 482 n.4.

Let me pause here to address the institutional concerns raised by my colleagues. I take the force of stare decisis seriously and have carefully considered the systemic reasons the majority has advanced against side-switching in a deep and persistent circuit conflict like this one. I am convinced, however, that our anti-mousetrapping

---

[2] The statute speaks in terms of the law of the convicting jurisdiction, which can be state or federal. The cases interpreting § 921(a)(20) have been chiefly concerned with state convictions, so for simplicity I will refer to the whole of "state law" but do not mean to disregard the federal possibility.

interpretation of § 921(a)(20) is mistaken. Beyond that (and I accept that something more should be required to overrule circuit precedent, *see Tate v. Showboat Marina Casino P'ship,* 431 F.3d 580, 582-83 (7th Cir. 2005)), our interpretation effectively ascribes a fluctuating meaning to the "unless" clause in the statute: It means one thing when the offender was provided a written notice of his dispensation and can produce it for the court, and something else when he did not receive written notice or received a notice but cannot produce it for the court (say, because he lost it or the state didn't retain a copy of it). In the first set of circumstances, the phrase "pardon, expungement, or restoration of civil rights" means "the notice," and in the second set of circumstances, the same phrase means "state law."

Moreover, our focus on the notice has produced vexing subsidiary questions present in this and other cases: What if the offender's notice mentions some but not all of the "big three" civil rights? What if some of those not mentioned as "restored" were not lost in the first place—or were only partially lost—under state law? What if the "restoration" happens automatically, in whole or in part, and (as appears to be the case here) the notice has no legal effect whatsoever? Where (as here) these questions are present, the phrase "pardon, expungement, or restoration of civil rights" in the "unless" clause appears to have a third meaning: it means "the notice" *and* "state law," read together—except that when it comes to the question of a continuing firearms disability, the notice trumps state law. With respect, an interpretation that produces such variable meanings has proven itself unworkable.

I think it's time to start over. And doing so brings me to the conclusion that our anti-mousetrapping interpretation of § 921(a)(20) improperly elevates the contents of the documentary notice over the requirements of state law. The hanging paragraph of § 921(a)(20) contains two explicit directives. One is that "[w]hat constitutes a conviction" for purposes of an ACCA or felon-in-possession predicate "shall be determined in accordance with the law of the [convicting] jurisdiction." The other is that a conviction that "has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored" is exempt from consideration "unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." The first sentence is a choice-of-law provision; it tells us to use state law to determine the effect of a state conviction for ACCA and § 922(g)(1) purposes. The second sentence tells us to exclude any conviction that has been expunged or for which the offender has been pardoned or has had civil rights restored *unless* the terms of the pardon, expungement, or restoration "expressly" include a restriction on possession of firearms. The applicability of the exemption thus appears to depend upon the offender's legal status following a pardon, expungement, or restoration of civil rights: Does the state still "expressly" consider him a felon subject to a continuing firearms disability or not?

Notably, the text of § 921(a)(20) nowhere mentions notice; that was entirely our gloss. True, the statute is awkwardly phrased; the use of the word "such"—as in

"*such* pardon, expungement, or restoration of civil rights"—can be read to suggest reference to a "thing" (e.g., a certificate or notice) rather than the terms of the offender's dispensation. But it reads too much into that awkward phrasing to conclude that the contents of a state-issued notice trump the requirements of state law where there is a conflict between the two; nothing else in the statute suggests that the operation of the "unless" clause turns on the accuracy of the notice the state gives to the offender.

Instead, when read together and harmonized, the two sentences of the hanging paragraph instruct us to determine the terms of a pardon, expungement, or restoration of civil rights by reference to the whole of state law, *not* the document the state used to notify the offender of his pardon, expungement, or restoration of civil rights. The document is *evidence* of the offender's change in legal status; the *terms* of that change in legal status are found in state law. Read as a whole, the statute calls for an inquiry into the effect of a pardon, expungement, or restoration of civil rights on the offender's state-law firearms restriction. That inquiry turns on the requirements of state law, not the contents of the notice or document the state uses to communicate a pardon, expungement, or restoration of civil rights.

Without the "notice" gloss, the text of § 921(a)(20) contains the following command: If a prior conviction has been expunged or the offender has been pardoned or has had his civil rights restored, then the conviction may not be counted as an ACCA or felon-in-possession

predicate *unless* state law "expressly provides" that the offender remains under a firearms disability. If state law *does* "expressly provide" that the offender remains under a firearms disability *notwithstanding* his receipt of a pardon, expungement, or restoration of civil rights, then the exemption is inapplicable and the conviction counts; the offender remains a felon for federal purposes *despite* the pardon, expungement, or restoration of civil rights. Put more succinctly, if state law expressly *retains* the firearms disability after a pardon, expungement, or restoration of civil rights, the conviction counts; if state law *removes* the firearms disability upon a pardon, expungement, or restoration of civil rights, the conviction does not count.

This reading is consistent with the Supreme Court's most recent pronouncement on § 921(a)(20). In *Logan* the Court said the chief purpose of § 921(a)(20) is federal deference "to a State's dispensation relieving an offender from [the] disabling effects of a conviction." 128 S. Ct. at 485. The scope of that dispensation is determined by reference to state law, not the contents of a state-issued document announcing the dispensation. The document may perform a notice function (in some cases perhaps imperfectly so), but it does not dictate the scope or terms of the dispensation; *that* is controlled by the pertinent provisions of state law. Our anti-mouse-trapping approach has the effect of deferring not to the actual legal terms of a state's dispensation but to the possibility that an individual felon might mistakenly believe, based on the contents of a discharge notice, that his firearms privileges were restored. This *ignores* state

law, rather than defers to it, simply because a written notice was sent. *See Caron v. United States*, 524 U.S. 308, 313 (1998) ("Nothing in the text of § 921(a)(20) requires a case-by-case decision to restore civil rights to this particular offender."). Our interpretation of the "unless" clause makes the offender's status for purposes of § 922(g)(1) and the ACCA turn on fortuities: the vagaries of sentence-discharge practices among state corrections officials and the diligence of an individual offender's recordkeeping.

For these reasons, I am persuaded that our prior interpretation of the "unless" clause in § 921(a)(20) was incorrect. The statute embodies not a "warning" or anti-mousetrapping principle but a state-law deference principle. The applicability of the § 921(a)(20) exemption for convictions that have been expunged or for which the offender has been pardoned or has had civil rights restored is determined by reference to the whole of state law, not the contents of a state-issued document announcing the offender's change in legal status. If state law "expressly provides" that the offender may not "ship, transport, possess, or receive firearms" despite having received a pardon, expungement, or restoration of civil rights, then the "unless" clause is satisfied, the § 921(a)(20) exemption does not apply, and the conviction counts as an ACCA and felon-in-possession predicate. I would withdraw *Erwin*'s anti-mousetrapping language and overrule *Glaser*, which adopted that interpretation of the statute as the law of this circuit.

As for Buchmeier, Illinois law prohibits convicted felons from possessing firearms, *see* ILL. COMP. STAT. 5/24-1.1(a),

and this prohibition applies notwithstanding the restoration of some of his civil rights upon completion of his sentence for the eight burglaries. Accordingly, I would hold that the § 921(a)(20) exemption does not apply, and his burglary convictions were properly counted for purposes of his § 922(g)(1) convictions and his enhanced sentence under the ACCA. Therefore, I must respectfully dissent.