# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 04-2920

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

JOHN D. KEMPF,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 04-CR-031—**John C. Shabaz**, *Judge.*

_____

ARGUED JANUARY 3, 2005—DECIDED MARCH 7, 2005

_____

Before BAUER, EASTERBROOK, and WOOD, *Circuit Judges.*

BAUER, *Circuit Judge.* John Kempf was indicted by a federal grand jury on one count of unlawful possession of a sawed-off shotgun. After pleading not guilty, Kempf filed a motion to suppress evidence that was seized from his room at a boarding house. The motion was denied by the district court. He then pleaded guilty to the indictment, reserving his right to appeal the suppression issue. Since exigent circumstances justified the initial warrantless entry into Kempf's room, we affirm.

*Background*

On December 13, 2003, Kempf accidently shot himself and sought treatment at a local hospital in Superior, Wisconsin. At the hospital, Kempf told police that a gun had fallen off the wall in his room, discharged when it hit the ground, and he was struck in the leg. However, the officer at the hospital noticed that the wound did not appear to be consistent with this version of events, in that the entry wound appeared to come from above rather than below. Kempf also informed police that there was a teenage boy in the house at the time he was shot. Kempf was either unwilling or unable to provide further details about the incident, including the name of the boy or the location of the boarding house where the shooting occurred.

Sergeant John Nowicki, who helped question Kempf at the hospital, attempted to locate the residence where the shooting had occurred. Nowicki was concerned about the safety of the teenage boy at the house and also the public at large; he had no way of knowing whether the boy had any role in the shooting or was possibly in danger himself. His investigation determined that the residence in question was 1828 Banks Avenue. Nowicki proceeded to this address and was met there by Officer George Gothner. The officers knocked on both doors to the house and David Ennis, a teenage boy, answered the back door and invited the officers inside. Ennis explained that his mother, who owned the house, was not home. He also explained that he had heard a gunshot and a cry of pain earlier in the day, while he was playing video games. Ennis stated that Kempf then came into his room and asked for help in walking to his car. After helping Kempf walk out to his car, Ennis resumed playing video games. He did not call 911 or his mother in response to the shooting. Nowicki observed that Ennis did not seem at all concerned about the situation, was difficult to understand, and had a flat affect. He initially suspected that Ennis was under the influence of drugs, but later determined that this was just his normal demeanor.

Sergeant Nowicki asked Ennis about the location of the gun which had been involved in the incident. What transpired next is a point of contention. According to the officers, Ennis turned and began to climb up the stairs, despite the fact that they had not asked him to retrieve the gun. Nowicki testified that he warned Ennis several times and told him to stop and wait. Ennis, however, continued up the stairs. According to Ennis, he initially told the police that the gun was in Kempf's room, then went up the stairs to show them. Ennis claims that he was never told by the officers to stop going up the stairs or into the room. Regardless, the officers followed Ennis up the stairs.

At the top of the stairs, concerned for his own safety, Nowicki drew his weapon and again warned Ennis not to go into the room. Nowicki noticed a room with a light on and the door wide open. Ennis entered the room and motioned vaguely toward a gun on the wall. Nowicki entered the room, ordered Ennis out, and quickly surveyed the situation. He immediately noticed several knives on the wall, a small derringer gun lying on the floor, empty holsters for firearms, and an open black duffel bag containing drugs. Nowicki decided to freeze the scene, and he left to obtain a search warrant for the room. While executing the search warrant, police discovered a sawed-off shotgun in a dresser drawer, which is the subject of the indictment in this case.

## Discussion

The sole issue on appeal is whether the district court erred in holding that exigent circumstances justified the police's warrantless entry into Kempf's room and thereby improperly admitted the evidence later found in the room. The existence of exigent circumstances is a mixed question of law and fact. We review the district court's factual determinations for clear error and review questions of law *de novo. United States v. Marshall*, 157 F.3d 477, 480 (7th

Cir. 1998). As the resolution of a motion to suppress is a fact-intensive inquiry, the district court's credibility determinations are reviewed deferentially, given its opportunity at the suppression hearing to hear the testimony and observe the demeanor of the witnesses. *Id.*; *United States v. Webb*, 83 F.3d 913, 916 (7th Cir. 1996).

In general, police need a warrant to enter a home or room but warrantless searches are permissible when police have a reasonable belief that exigent circumstances require immediate action and there is no time to obtain a warrant. *United States v. Jenkins*, 329 F.3d 579, 581 (7th Cir. 2003). An example of exigent circumstances is when police reasonably fear for their safety or the safety of someone inside the premises. *Id.*; *Webb*, 83 F.3d at 916. In the instant case, Kempf informed the officers that he had been shot accidently, and that there was a teenage boy in the house where the shooting occurred. The officers also had some reason to believe, based upon Kempf's wound, that the shooting did not occur exactly as he had described. At the time they entered the house and began talking with Ennis, the officers established that Ennis did not appear to be in any immediate danger, but they still did not know the exact details of the shooting, where the gun was located, whether the gun was loaded, who else may have been in the house, or whether anyone in the house may have been involved in the shooting. So when Ennis began climbing the stairs to retrieve the gun, despite their repeated warnings, the police had every reason in the world to fear for their safety and the safety of others who may have been inside the house.[1] Following Ennis into the room was a reasonable response under the circumstances. Once inside the room, with drugs and weapons in plain view, Sergeant Nowicki correctly froze the scene and sought a search warrant.

---

[1] We note that the district court credited the testimony of the police officers over Ennis on whether they instructed him to stop, a finding which we do not disturb.

Based on what Kempf told the officers at the hospital and Ennis' behavior at the house, a reasonable officer would have feared for his own safety and the safety of those inside the house; the exigent circumstances justified Sergeant Nowicki's entrance into Kempf's room. The district court's denial of Kempf's motion to suppress was correct. AFFIRMED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*