In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-3664

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

*v.*

ALBERT D. BURNETT,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:09CR30032-001-GPM—**G. Patrick Murphy**, *Judge*.

ARGUED MAY 4, 2011—DECIDED JUNE 6, 2011

Before EASTERBROOK, *Chief Judge*, and FLAUM and SYKES, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Albert Burnett is a violent man. He has been convicted five times of aggressive felonies—murder, attempted murder (twice), aggravated battery, and domestic battery—and several times of other offenses, including twice possessing firearms made unlawful by his status as a felon. Judges and parole officials in Illinois have been remarkably lenient.

Burnett served less than four years of his sentence for murder, a crime he committed while on parole from the two convictions for attempted murder, before being released again on parole. In April 2009 Burnett participated in a shootout in Alton, Illinois. This time he was prosecuted in federal court, where he pleaded guilty to unlawful possession of a firearm. 18 U.S.C. §922(g)(1). The prosecutor asked the district court to sentence Burnett as an armed career criminal under §924(e), which carries a 15-year minimum term. This subsection applies to a person who commits a firearms offense and has three previous convictions for violent felonies or serious drug offenses.

Burnett has five prior convictions of crimes that have violence as an element of the offense. But the district court concluded that four of the five do not count because, when Burnett's parole supervision on his murder and aggravated battery convictions expired, state officials sent him letters saying that his civil rights to vote and hold office had been restored automatically under Illinois law. These letters did not tell Burnett that Illinois does not restore to felons the right to possess firearms. The omission of that information led us to hold in *Buchmeier v. United States*, 581 F.3d 561 (7th Cir. 2009) (en banc), that a letter identical to the two Illinois sent Burnett meant that the conviction to which the letter referred no longer counts as a violent felony. *Buchmeier* interpreted §921(a)(20), which provides, among other things, that "[w]hat constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any

conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms."

The United States contended in the district court that, although Illinois twice sent Burnett the same letter it sent Buchmeier, the record does not establish that Burnett received or read the letter either time. Burnett could not produce copies, and he does not remember whether he received the letter (or read it, if he got it). Illinois sends these letters by ordinary mail, so receipt could not be documented by Burnett's signature or that of a relative. (Illinois must have sent the letters to his mother's address, the only one it had on file for him.) *Buchmeier* described §921(a)(20) as an anti-mousetrapping rule, designed to ensure that persons who have been told that all civil rights have been restored are not taken by surprise when the statute books contain reservations (such as a ban on possessing firearms) omitted from the communication. 581 F.3d at 566–67. This implies, the prosecutor contended, that only a person who can show that he received, read, and understood a misleadingly incomplete communication from the state can take advantage of the "unless" clause in §921(a)(20).

The district court concluded, however, that §921(a)(20) establishes an objective rule—one that depends on the content of the communication—rather than a subjective

rule that depends on the extent of a recipient's (mis)understanding. This knocked out the murder and aggravated battery convictions. The court also concluded that the letter Burnett received when his parole from the murder conviction expired applies to the two earlier convictions for attempted murder as well. This left only one qualifying conviction for a violent felony. That is enough to support a felon-in-possession conviction under §922(g) but not enough for a recidivist enhancement. The district court sentenced Burnett to 120 months' imprisonment, the statutory maximum under §922(g)(1) but 60 months below the minimum term prescribed by the Armed Career Criminal Act. The United States has appealed.

We agree with the district court that §921(a)(20) sets an objective standard. Nothing in the statutory language asks what a person believes. The statute asks only what a document contains. If the document says that civil rights have been restored but omits a firearms qualification, then the conviction no longer counts as a violent felony. *Buchmeier* used the anti-mousetrapping language to summarize the reason why Congress wrote §921(a)(20) to require the firearms reservation to be in the communication—rather than, say, requiring the felon to search the whole of state law to discover what rights he enjoyed. But the reasons *behind* a statute differ from the contents *of* a statute. Congress implemented its goal by language that turns entirely on the content of the communication. *Buchmeier* held that the effect of a communication does not depend on state law as a whole, and we add today that the effect also does not depend

on whether the recipient reads or understands the communication. Section 921(a)(20) directs us to the four corners of the document, and there we stop.

The prosecutor's second argument is stronger, however. The letters that the Illinois Department of Corrections sent to Burnett begin by stating that the addressee completed his sentence (or his parole, if any) on a particular date, and that on that date "your obligation to the Department ceases." The letter then says that the rights to vote and hold office under the Constitution of the State of Illinois have been restored. The inclusion of a date that ties the letter to a single sentence implies that rights have been restored with respect to the convictions underlying that sentence only. This would be clear if Burnett had been convicted of two murders and had been pardoned for only one; the other conviction would remain, with whatever civil disabilities it carried. We do not see why a letter should be treated differently. Illinois makes the restoration of (some) civil rights automatic when a sentence has been fully served. That is a conviction-by-conviction process, and a letter telling the ex-prisoner about this logically also applies conviction-by-conviction.

Burnett replies (and the district judge concluded) that the date in the letter links it to all convictions being served at one time, rather than to a particular conviction. That is a possible reading, we suppose. The letter includes a date but does not mention the crime. It does not say "your parole following your conviction for murder expired on" a particular date. It says instead that

"you have completed the maximum of your sentence as of" a given date. A person who had been serving concurrent sentences might read the singular "sentence" to designate the whole custodial term, and then the anti-mousetrapping concern that we discussed in *Buchmeier* implies that the letter covers all of the crimes that led to the concurrent sentence. This understanding would be consistent with Illinois law, too: the expiration of multiple sentences on a single date automatically restores civil rights with respect to all of those convictions. But that is not remotely Burnett's situation.

Burnett stabbed a man in the back on March 8, 1988, and was convicted of attempted murder. He beat a man with a pipe on May 9, 1988, and was convicted of a second attempted murder. He was sentenced for both crimes on August 18, 1988, to concurrent terms of six years' imprisonment, from which he was paroled on March 17, 1992. He killed a man on July 8, 1992. His parole on the two attempted-murder convictions was revoked that October, placing him back in prison. He was later convicted of murder. In January 1994 his maximum imprisonment on revocation of parole ended; from then on his custody was supported only by the sentence he received for the murder conviction. He was paroled from the murder conviction in April 1997, and that term of parole expired in April 1999. That's when the Department of Corrections sent him the letter saying that his civil rights had been restored.

As an objective matter, a letter that refers to the expiration of a sentence in April 1999 must have been dealing

with the murder conviction alone; by then the end of Burnett's custody following the revocation of his parole lay more than five years in the past. It may well be that Illinois refrained from sending Burnett letters in January 1994 about his attempted-murder convictions because the ongoing custody for the murder conviction meant that he could not vote or hold public office. But it does not matter why Illinois failed to send letters in January 1994; this appeal concerns the effect of the letter it *did* send in April 1999. That letter, linked as it was to the expiration of his parole on the murder conviction, has an effect limited to the murder conviction. Likewise the letter that Burnett received in 2002, when his sentence for aggravated battery expired, covers that crime alone.

This means that Burnett has three countable convictions for violent felonies: two attempted murders and one domestic battery. He must be resentenced under §924(e) as an armed career criminal.

We cannot close, however, without remarking on the continuing difficulties that Illinois seems to be experiencing in informing its ex-prisoners which civil rights they hold, and which they do not. *Buchmeier* discusses several of the problems in the letter that the Department of Corrections used from the early 1990s through March 2004, the form sent to both Buchmeier and Burnett. That form misstates the civil rights that have been restored (despite what the letter says, the right to vote is not automatically restored to ex-prisoners), fails to alert ex-prisoners that they cannot run for mayor

and other offices not created directly by the Constitution of Illinois, and omits the vital firearms reservation. As this case shows, the form letter also is ambiguous about the scope of its application. By including a date, but omitting any mention of which convictions the letter covers, the communication could be read to restore civil rights for *all* former felonies—and, though we have held that it does not have this effect, it does restore civil rights for all crimes that led to concurrent sentences ending on the date specified in the letter. (That was the situation in *Buchmeier* itself.)

Illinois changed its form letter in March 2004, and it sent the modified form to Burnett when his supervision for domestic battery ended. The revised letter omitted any reference to the right to vote. This meant that the letter did not tell the ex-prisoner that he now enjoys the "big three" civil rights (to vote, hold public office, and serve on juries), which took it outside the scope of §921(a)(20). As we discuss in *Buchmeier*, Illinois does not deprive felons of the right to serve on juries, so only voting and public offices can be restored or withheld. 581 F.3d at 564. Unless a communication says that both of those rights have been restored, however, omission of a firearms reservation does not cancel the conviction's status as a violent felony. The March 2004 form's omission of any reference to voting must be why Burnett has not denied that his conviction for domestic battery is a violent felony. Still, the 2004 version remained misleading because it did not distinguish constitutional from statutory offices, did not contain a firearms reservation, and did not say which convictions it covered.

After this court decided *Buchmeier*, Illinois altered the letter again. Since September 2009 the Department of Corrections has sent letters that do not refer to the right to vote and do tell ex-prisoners that they are forbidden to possess firearms. That's a big improvement—but problems remain, because even the September 2009 version of the form letter does not distinguish constitutional from statutory offices. Worse, it begins by referring to the date on which a term of confinement or supervision ended but does not specify which conviction or convictions it covers. Illinois can and should do better to notify ex-prisoners which civil rights have been restored on which convictions, while ensuring that they know that their convictions disqualify them from possessing firearms.

REVERSED AND REMANDED FOR RESENTENCING