NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 11, 2012
Decided December 19, 2012

**Before**

WILLIAM J. BAUER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 12-2851

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff–Appellee,* | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 3:11-cr-00105-wmc-1 |
| GERALD HOPEWELL, *Defendant–Appellant*. | William M. Conley, *Chief Judge*. |

**O R D E R**

Gerald Hopewell appeals the denial of his motion to suppress a gun that officers found inside his backpack when they stopped him on suspicion that he was carrying a concealed weapon. The district judge concluded that the officers executed a lawful *Terry* stop and that exigent circumstances justified the subsequent search of Hopewell's backpack. We agree and affirm the judgment.

At an evidentiary hearing on Hopewell's motion, the following testimony was elicited:

According to an arresting officer, dispatch notified him of a 911 caller reporting that a loaded gun had been pointed at him by a male bus passenger, who then placed the gun into a red backpack. The caller described the man as a large,

black male wearing a black shirt, jeans, and a baseball hat bearing the words "Windy City." The caller also identified the bus's route and number, and said that the man had fallen asleep. Officers located the bus, emptied it, and found near the rear a sleeping man who matched the caller's description. The officers drew their guns and ordered the man, later identified as Hopewell, to put up his hands. As directed, Hopewell put his backpack on the ground, stood up, kept his hands up, walked down the center aisle of the bus, and lay face-down on the bus floor, where he was handcuffed.

As Hopewell was being taken into custody, another officer boarded the bus, spotted the red backpack, and searched it. This officer testified that he searched the backpack out of a safety concern: the 911 caller had reported seeing a revolver, and the officer (a 28-year veteran with experience in firearm instruction) feared that a cocked revolver equipped with a light trigger could easily fire. In the backpack he found the Ruger .357 magnum revolver. Hopewell was indicted for unlawfully possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1).

The district judge, adopting a magistrate judge's recommendation, denied Hopewell's motion. According to the district judge, the information provided by the 911 caller was sufficiently detailed and corroborated by the officers who found Hopewell on the bus, and this information alone supplied reasonable suspicion to justify an investigative stop under *Terry v. Ohio*, 392 U.S. 1 (1968). The judge also ruled that the officers lawfully used force as part of the stop, and that the search was justified by exigent circumstances: The report of a loaded weapon on a city bus made it reasonable for the officer to believe that the revolver posed a genuine safety risk.

Hopewell pleaded guilty to being a felon in possession of a firearm, § 922(g)(1), but reserved his right to appeal the denial of his motion.

On appeal Hopewell first argues that the district judge wrongly characterized the seizure as a *Terry* stop. He contends that the stop became a full arrest when the officers awoke him with guns drawn, ordered him to the bus floor, handcuffed him, and took him to a police car. This arrest was unlawful, he continues, because neither the uncorroborated 911 call nor any other information furnished probable cause. He points to a comment in the magistrate judge's report that this circuit never has concluded that an uncorroborated report alone from an identified 911 caller establishes probable cause that a crime has occurred.

Although the government agrees that the seizure was an arrest, we believe that the district judge correctly concluded that the officers performed only a *Terry* stop. Whether officers perform an arrest or only a *Terry* stop is judged objectively, based on the totality of the

circumstances. *United States v. McCauley*, 659 F.3d 645, 649 (7th Cir. 2011). Although the officers forcibly detained Hopewell and placed him in handcuffs, their safety concerns—that Hopewell was concealing a gun—justified their use of force and restraints as part of a *Terry* stop without it becoming a full arrest. *See United States v. Bullock*, 632 F.3d 1004, 1016 (7th Cir. 2011); *Jewett v. Anders*, 521 F.3d 818, 823 (7th Cir. 2008). Because this was not an arrest, the officers needed only a reasonable suspicion that Hopewell was committing a crime for the stop to be lawful. *See United States v. Bohman*, 683 F.3d 861, 864 (7th Cir. 2012); *Jewett*, 521 F.3d at 823–24.

Hopewell does not argue whether, as a *Terry* stop, the officers had a reasonable suspicion; he argues only that the district judge wrongly characterized the nature of the stop, and that the officers lacked *probable cause* (the standard of proof required for an arrest) because the officers never corroborated the 911 call, rendering it unreliable. Because Hopewell fails to challenge the district court's conclusion that the officers had a reasonable suspicion for the stop, he has waived this contention. *See LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 943 (7th Cir. 2010).

But even if he had argued this point, the district court correctly concluded that the 911 call provided reasonable suspicion that Hopewell was carrying a concealed gun. We presume the reliability of an emergency 911 call, *see United States v. Drake*, 456 F.3d 771, 774–75 (7th Cir. 2006); *United States v. Hampton*, 585 F.3d 1033, 1038–39 (7th Cir. 2009), and here the caller identified himself and gave extra details (his phone number, work location, and knowledge that Hopewell was concealing a gun), thus supplying the officers with all the information they needed to reasonably suspect that Hopewell had a gun, *see United States v. Booker*, 579 F.3d 835, 839 (7th Cir. 2009). Moreover, the officers had no reason to doubt the truthfulness of the caller, *see Drake*, 456 F.3d at 775 (noting that presumed reliability of call may be overcome if officers learn reason to doubt its accuracy); rather, they confirmed the information when they boarded the bus identified by the caller and found Hopewell, who was asleep (as the caller said he would be) and matched the caller's description.

Hopewell next contests the district judge's conclusion that exigent circumstances justified the officers' warrantless search of his backpack. He contends that the officers' evidence was too speculative and vague to support their safety concerns. He insists that the chance the gun in his backpack was a revolver, cocked, and equipped with a light trigger, and the risk that it would fire if moved, was too hypothetical and remote to support a finding of exigency.

The district court properly concluded that exigent circumstances justified the search of Hopewell's backpack. To justify the search based on exigent circumstances, the government had to show that the officers reasonably believed that the search was necessary to prevent serious injury to themselves or to the public, and that there was no time to obtain a warrant.

*See United States v. Bell*, 500 F.3d 609, 612–13 (7th Cir. 2007); *United States v. Webb*, 83 F.3d 913, 916–17 (7th Cir. 1996).  Because the officer who searched the bag was experienced in firearms safety and knew that Hopewell had displayed, loaded, and hidden in his backpack the revolver, he could reasonably conclude that the gun posed a safety risk and was justified in searching the backpack.  *See United States v. Huddleston*, 593 F.3d 596, 600 (7th Cir. 2010) (concluding that presence of armed, sleeping trespasser provided exigent circumstances for search of house); *United States v. Kempf*, 400 F.3d 501, 503 (7th Cir. 2005) (finding reasonable officers' safety justification for warrantless entry of house when they believed defendant could access potentially loaded gun inside); *Webb*, 83 F.3d at 917 (upholding warrantless search of car based on exigent circumstances when defendant tossed gun in trunk of car because gun could easily fire and was accessible to passers by).

**AFFIRMED**.