NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit
Chicago, Illinois 60604**

Argued January 25, 2013
Decided February 28, 2013

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 12-2300

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States |
| *Plaintiff-Appellee*, | District Court for the Northern |
| | District of Indiana, Hammond Division. |
| *v.* | |
| | No. 09 CR 00233 |
| DWAYNE SWIMS, | |
| *Defendant-Appellant*. | Joseph S. Van Bokkelen |
| | *Judge*. |

**O R D E R**

Dwayne Swims pleaded guilty to one count of unlawful possession of a firearm by a felon, 18 U.S.C. § 922(g)(1), and three counts of distributing crack cocaine, 21 U.S.C. § 841(a)(1). This was not Swims' first encounter with the law: he was convicted of forcible rape and sodomy in San Bernadino County, California, in 1983; burglary in Cook County, Illinois, in 1997; and aggravated robbery in Cook County, Illinois, in 2002. Based on these convictions, the

district court determined that Swims was an armed career criminal pursuant to the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"), which mandates a fifteen-year mandatory minimum sentence for any person convicted of being a felon in possession of a firearm who has "three previous convictions . . . for a violent felony." *Id.* § 924(e)(1). The district court sentenced Swims to the fifteen-year minimum term of imprisonment on the firearms count, concurrent 120-month terms on the drug counts, and three years of supervised release. On appeal, Swims contends that the district court erred in sentencing him as an armed career criminal because a letter he received from the Illinois Department of Corrections ("IDOC") restored his civil rights, thereby invalidating his prior convictions for purposes of the ACCA. We affirm.

At some point after Swims was released from prison in 2004, he received a letter from IDOC indicating that he had successfully completed his sentence. The letter stated, in part:

> We are pleased to inform you of the restoration of your right to hold offices created under the Constitution of the State of Illinois. You also have the right to restoration of licenses granted to you under the authority of the State of Illinois if such license was revoked solely as a result of your conviction, unless the licensing authority determines that such restoration would not be in the public interest.

Although Swims concedes that his three prior convictions were for "violent felon[ies]" under 18 U.S.C. § 924(e)(2)(B), he argues that they cannot serve as predicate convictions for purposes of the ACCA because the IDOC letter constituted a valid restoration of his civil rights under 18 U.S.C. § 921(a)(20).[1] We consider Swims' claim that the district court erred in sentencing him as an armed career criminal *de novo*, except to the extent that the alleged error "implicates a factual finding," which we review for clear error. *United States v. Foster*, 652 F.3d 776, 792 (7th Cir. 2011) (citations omitted).

Not every "violent felony" conviction constitutes a qualifying offense for ACCA sentence-enhancement purposes. Section 921(a)(20) excludes "[a]ny conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil

---

[1] Swims appears to contend that the IDOC letter invalidated all of his prior convictions. While we need not reach that issue here, we note that in *United States v. Burnett*, 641 F.3d 894, 896 (7th Cir. 2011), we said that the restoration of rights "applies conviction-by-conviction" and that a letter referencing a date of completion of a sentence "implies that rights have been restored with respect to the convictions underlying that sentence only."

rights restored . . . unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." We have treated the "unless" clause in § 921(a)(20) as a "notice" or "anti-mousetrapping" provision, *see, e.g., United States v. Buchmeier*, 581 F.3d 561, 566 (2009) (en banc); *United States v. Gillaum*, 372 F.3d 848, 860-61 (7th Cir. 2004); *United States v. Erwin*, 902 F.2d 510, 512 (7th Cir. 1990), meaning that "a state may not employ language in discharging a prisoner that will lull the individual into the misapprehension that civil rights have been restored to the degree that will permit him to possess firearms." *United States v. Vitrano*, 405 F.3d 506, 510 (7th Cir. 2005). Thus, if a state sends a document to a convicted felon that seems to restore all civil rights, "the conviction does not count for federal purposes unless the document warns the person about a lingering firearms disability." *Buchmeier*, 581 F.3d at 566. Section 921(a)(20) does not specify which civil rights must be restored in order to preclude a state conviction from counting, but we have concluded that three core civil rights matter: the rights to vote, hold public office, and serve on juries. *United States v. Williams*, 128 F.3d 1128, 1134 (7th Cir. 1997) (citations omitted). Accordingly, when a state gives a released prisoner written notice that "all" of his civil rights have been restored, or at least tells him that his rights to vote, hold office, and serve on a jury have been restored (if taken away), the state must include notice in that communication of any firearms limitation; if not, the conviction does not count for federal purposes. *Buchmeier*, 581 F.3d at 566–67.

Swims acknowledges that the IDOC letter he received did not mention the rights to vote or serve on a jury or tell him that "all" of his civil rights were restored. Nonetheless, he argues that because his right to vote was automatically restored by operation of state law, 730 Ill. Comp. Stat. 5/5-5-5(c), and his right to serve on a jury was never technically suspended, *see Buchmeier*, 581 F.3d at 565, his "big three" civil rights were restored and his prior convictions should therefore not count under § 921(a)(20). Although this argument has some superficial appeal, it is foreclosed by our precedent prohibiting us from consulting state statutes in determining whether the requirements of § 921(a)(20) have been met for a given conviction when an individual has received some form of notice, such as the letter Swims received, of the restoration of civil rights. *See United States v. Burnett*, 641 F.3d 894, 896 (7th Cir. 2011) ("Section 921(a)(20) directs us to the four corners of the document, and there we stop."); *Gillaum*, 372 F.3d at 859-60 ("This court has held that, where a criminal defendant is given a formal notice of the restoration of civil rights, a court's inquiry is limited to the contents of that document." (citation omitted)); *United States v. Glaser*, 14 F.3d 1213, 1218 (7th Cir. 1994) ("When the state gives the person formal notice of the restoration of civil rights, . . . the final sentence of § 921(a)(20) instructs us to look, not at the contents of the state's statute books but at the contents of the documents."); *Erwin*, 902 F.2d at 513 ("The last clause of § 921(a)(20) deals not with the arrangements of a state's statutes but with misleading omissions in pardons, notices of expungement, and the like.").

Confining our inquiry to the four corners of the document, the IDOC letter Swims received omitted reference to the right to vote and, therefore, did not sufficiently restore Swims' civil rights so as to invalidate his convictions under § 924(a)(20). *See Gillaum*, 372 F.3d at 860-61 (concluding that notice received by the defendant did not restore the defendant's civil rights for purposes of § 924(a)(20) because it did not mention the rights to serve on a jury and hold elective office); *see also Burnett*, 641 F.3d at 897 (noting in dicta that the letter modified by Illinois in March 2004 "did not tell the ex-prisoner that he now enjoys the 'big three' civil rights' . . . which took it outside the scope of § 924(a)(20)").

Seeking to avoid this result, Swims likens this case to *Buchmeier*, in which we held that the mention of only two of the "big three" civil rights—the rights to vote and hold office—in a document received by the defendant was sufficient to bring it within the purview of § 924(a)(20). *Buchmeier*, 581 F.3d at 565. But in *Buchmeier*, we explained that the document's silence regarding the right to serve on a jury was not problematic because that right, unlike the rights to vote and hold office, had never been suspended, and "there is no need to notify a defendant that a given civil right had been restored, unless it was first taken away." *Id.* at 564-65. Here, the IDOC letter failed to mention the right to vote, a right that was restored automatically to Swims after the completion of his sentence. 730 Ill. Comp. Stat. 5/5-5-5(c). This distinction makes the IDOC letter Swims received more akin to that received by the defendant in *Gillaum*, which we held was insufficient because it only mentioned restoration of the rights to vote and administer estates. *Gillaum*, 372 F.3d at 860-61. This was so even though, as here, the defendant in *Gillaum* pointed out that he had regained all his core civil rights automatically under Illinois law. *Id.* at 861. We rejected that argument, reasoning that consulting Illinois law to determine which rights were automatically restored by law would lead us down the path to the statutory prohibition on the possession of a firearm by a convicted felon, 720 Ill. Comp. Stat. 5/24-1.1, which, in turn, would provide "the express notice required by § 921(a)(20) to permit a court to count a conviction." *Gillaum*, 372 F.3d at 861 (citation omitted). That same reasoning applies here.

Swims also highlights the split among our sister circuits regarding whether this court's "anti-mousetrapping" doctrine is consistent with § 921(a)(20), *see Logan v. United States*, 552 U.S. 23, 33 n.4, 128 S.Ct. 475, 169 L.Ed.2d 432 (2007) (recognizing circuit split), and asks us to overrule *Erwin* and its successors. But we declined to do so *en banc* in *Buchmeier*, 581 F.3d at 565-67, and will not do so here. The IDOC letter received by Swims did not restore his civil rights under § 921(a)(20), and application of the armed career criminal enhancement based on his three prior felony convictions was therefore appropriate.

**AFFIRMED**.