In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 20-2261

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ELSTON STEVENSON,

*Defendant-Appellant.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:18-cr-00116-1 — **John J. Tharp, Jr.**, *Judge.*

---

ARGUED MARCH 30, 2021 — DECIDED SEPTEMBER 8, 2021

---

Before KANNE, BRENNAN, and SCUDDER, *Circuit Judges.*

BRENNAN, *Circuit Judge.* Elston Stevenson possessed a firearm as a felon, and as an armed career criminal he received an enhanced sentence. In the district court and on appeal, he challenges whether, given that state officials sent him a restoration of rights letter, two of his prior Illinois state convictions could support that enhancement. The district court concluded that Stevenson did not establish by a preponderance of the

evidence that the letter in question pertained to those predicate convictions. That court did not clearly err, so we affirm.

**I**

On November 22, 2017, mourners gathered at a funeral at a cemetery in Evergreen Park, Illinois. During the burial, Stevenson drew a revolver and fired one shot into the grave. He then waved the gun towards the crowd and fled. Soon after, police officers arrested Stevenson and recovered the gun, which was discarded nearby. A grand jury indicted Stevenson with one count of possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e), to which Stevenson pleaded guilty.

**A. Presentencing Phase**

The presentencing phase of Stevenson's case was contentious. In the presentence investigation report, the probation department concluded that Stevenson should receive an enhanced sentence under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), based on three of his prior Illinois state convictions:

1. 1989 conviction for attempted murder;

2. 1989 conviction for manufacture and delivery of cocaine; and

3. 2010 conviction for robbery.

With a total offense level of 30 and a criminal history category of IV, the probation office recommended a guidelines range of 135 to 168 months' imprisonment. But because Stevenson qualified as an armed career criminal—warranting a minimum 15-year sentence—the probation office recommended 180 months' imprisonment.

Stevenson disagreed with the sentencing recommendation. In two memoranda he challenged the validity of his two 1989 convictions as ACCA predicates. Stevenson claimed he received a letter restoring his civil rights from the Illinois Department of Corrections (IDOC) discharging him from his 1989 convictions.

The government pushed back, relying on an affidavit from Kevin Heard, a computer programmer for IDOC from 1988 to 2010. Heard averred "the restoration-of-rights discharge letters were generated when an offender 'completed the term of parole.'" A defendant's movement history would indicate whether a discharge letter had been generated. The entry "Parole Out" indicated that the offender was released and placed on parole; "Discharge Out" meant that the offender was outside of IDOC's legal jurisdiction. An offender is discharged out when he completes his term of parole. Illinois's offender tracking system also kept a "mittimus"—a type of transcript of an offender's convictions and sentences—which contained the terms of imprisonment and parole. The government argued that if IDOC had sent a restoration letter, that would have been noted by a "Discharge Out" entry on the defendant's movement history, as the offender tracking system automatically generated discharge letters for those who were discharged out.

Stevenson's mittimus and movement history show he was admitted to IDOC for his 1989 offenses on December 1, 1989. He was paroled out of IDOC custody on May 17, 1993. Then on December 19, 1993, he was arrested for Unlawful Use/Possession of a Weapon by a Felon (UUW). He pleaded guilty to that offense on March 17, 1994, and he was sentenced to three years' imprisonment. The next day, Stevenson was re-

admitted to IDOC custody. For Stevenson, a "Discharge Out" entry appears on March 15, 1996, but nothing before that date. The government contended that the corresponding 1996 restoration letter applied only to Stevenson's 1994 UUW conviction, not to his 1989 convictions. To the government, the absence of a "Discharge Out" entry as to Stevenson's 1989 convictions conclusively proved that no discharge letter was generated for Stevenson during this time period. That would mean Stevenson did not successfully complete his parole for his 1989 convictions before his arrest in the UUW case.

Stevenson disagreed. He argued it is "quite possible" that the "Discharge Out" entry in 1996 applied to at least one of his 1989 convictions. Given that in 1989 Stevenson received six years on the attempted murder conviction to run consecutive to four years on the drug delivery conviction, he contended that when the "Discharge Out" entry was entered on March 15, 1996, he was still on parole for at least one of those two offenses. Stevenson submitted that a "B-Both" notation on his mittimus under the column "Discharge Indicator" for his 1994 UUW conviction and 1989 attempted murder conviction supports his contention.

## B. Sentencing

Stevenson's sentencing hearing stretched over two days. It began on January 16, 2020, and after an adjournment for the parties to brief the impact of the restoration letter, it was concluded on July 1, 2020.

The district court acknowledged that Stevenson's movement history is "not a model of clarity" and is "somewhat confusing." The court pointed out that Stevenson was serving three sentences simultaneously—for a 1988 UUW conviction

(for which he received a two-year sentence to run concurrently with the 1989 drug trafficking offense), the 1989 drug trafficking conviction (with a four-year sentence), and the 1989 attempted murder conviction (with a six-year sentence). Each of these sentences began on December 1, 1989. Stevenson received 152 days credit for the 1988 UUW and 1989 drug trafficking convictions, and 226 days credit for his 1989 attempted murder conviction. So the court determined that the sentence for Stevenson's 1989 attempted murder conviction would have ended on April 17, 1995.[1] From this, the district court concluded that Stevenson "was in custody when he was discharged and could not—he was discharged because he couldn't be held any longer. … He couldn't be paroled out on the attempt murder charge in 1996 because his sentence, his six-year sentence had already run its course. This is buttressed by the fact that there is no discharge out entry on the movement record that's connected to the April 17, 1995 date." Because the offender tracking system "only automatically generated discharge letters for offenders who discharged out from a parole location by completing parole," the court concluded that Stevenson was not discharged out. Rather, "[h]e

---

[1] The district court calculated as follows: "Mr. Stevenson had 1,964 days to serve on his sentence as of 12/1/1989 when he started that attempt murder sentence. If you measure from 12/1/1989 to April 17, 1995 when he was discharged, you have 31 days in December of '89, you have five full years of 365 days a year, and then you have the balance of 1995: 31 days in January, 28 days February, 31 days March, and 17 days in April of 1995. When you add those numbers up comes out to 1,963 days, the same number of days that Mr. Stevenson had left to serve as of December 1, 1989 when he officially began serving his IDOC sentence on all three of those cases." July 1, 2020 Sent. Tr. at 41–42, ECF No. 81.

completed those sentences in custody on April 17, 1995 and was not discharged out from a parole location."

The district court highlighted that the restoration letter IDOC used in the 1990s expressly referenced a defendant's discharge from parole/mandatory supervised release. The letter stated: "We take this opportunity to congratulate you on your successful completion of your supervision and wish you continued success." The court concluded that the content of the letter was consistent with the information that computer programmer Heard provided in his affidavit. From all this, the court concluded that Stevenson was not discharged out from parole on either the drug trafficking charge or the attempted murder charge.

Stevenson argued the district court erred in its calculation, specifically that he began serving the six-year sentence for his 1989 attempted murder conviction on December 1, 1989. Because that sentence was to be served consecutively to the four-year sentence for his drug conviction, Stevenson contended the six-year sentence could not have started in late 1989. Stevenson also asked the court to draw an adverse inference against the government because of the puzzling IDOC records.

The district court rejected Stevenson's arguments, reasoning that he had failed to show by a preponderance of the evidence that his civil rights had been restored on at least one of his 1989 convictions. Ruling that the ACCA enhancement applies, the district court sentenced Stevenson to 15 years' imprisonment.

**II**

A person who violates 18 U.S.C. § 922(g) and has three prior convictions for a "violent felony" or "serious drug offense" receives an enhanced sentence as an armed career criminal. 18 U.S.C. § 924(e). Under 18 U.S.C. § 921(a)(20), a conviction for which a defendant's civil rights have been restored cannot serve as a predicate offense unless the restoration of rights "expressly provides that the person may not ship, transport, possess, or receive firearms." This court has described § 921(a)(20) as "an anti-mousetrapping rule, designed to ensure that persons who have been told that all civil rights have been restored are not taken by surprise when the statute books contain reservations (such as a ban on possessing firearms) omitted from the communication." *United States v. Burnett*, 641 F.3d 894, 895 (7th Cir. 2011) (citing *Buchmeier v. United States*, 581 F.3d 561, 566–67 (7th Cir. 2009) (en banc)).

Stevenson appeals his sentence, contending the district court erred when it enhanced his sentence under ACCA. The 1989 attempted murder conviction, Stevenson argues, is not a valid ACCA predicate because Illinois allegedly restored his civil right to bear arms. He maintains that the restoration letter from 1996 applies to both his attempted murder conviction and UUW conviction. He points to his mittimus and movement history to assert he was "paroled out" on both the UUW and attempted murder convictions on April 17, 1995 and "discharged out" on both cases on March 15, 1996.

We review a district court's factual findings underlying its application of ACCA for clear error. *United States v. Love*, 7 F.4th 674, 677 (7th Cir. 2021). We defer to the district court's factual findings "unless we have a definite and firm

conviction that a mistake has been made." *United States v. Foster*, 652 F.3d 776, 792 (7th Cir. 2011). The defendant has the burden of showing by a preponderance of the evidence that his civil rights were restored. *United States v. Zuniga*, 767 F.3d 712, 719 (7th Cir. 2014).

If a defendant establishes that he was sent a letter restoring his civil rights, he must also show the letter applies to the relevant prior convictions. In *Burnett*, this Court explained that restoration of rights is "a conviction-by-conviction process, and a letter telling the ex-prisoner about this logically also applies conviction-by-conviction." 641 F.3d at 896. The defendant in *Burnett* served multiple, overlapping sentences for multiple convictions, but upon being discharged from IDOC custody received only a single letter. This court concluded that a restoration letter linked to the expiration of parole on one conviction is limited to that conviction. *Id.* at 897. *See also United States v. Boyce*, 742 F.3d 792, 795 (7th Cir. 2014) (rejecting the argument that a single restoration-of-rights letter restored civil rights on all of defendant's previous felonies).

Stevenson argues he was sent a restoration letter around the time he was discharged from parole for one conviction. But he did not establish by a preponderance of the evidence that such an IDOC letter sent to him on March 15, 1996 pertained to his two 1989 convictions which served as predicates under ACCA. As in *Burnett* and *Boyce*, when Stevenson was finally "discharged out" from IDOC custody on March 15, 1996, the letter he was sent could pertain only to his 1994 UUW conviction, for which he had just finished parole. His sentences on his 1989 convictions had already ended while he remained in custody.

The district court made this determination after closely examining the available IDOC records and considering the sworn statements of IDOC computer programmer Heard, who had intimate knowledge of the processes and procedures under which IDOC issued restoration letters during the relevant timeframe. Given this evidence, the district court did not clearly err in finding that Stevenson did not receive such a letter related to his 1989 convictions. Stevenson's sentences for those convictions expired while he remained in IDOC custody for another, later offense, rather than—as required under IDOC procedures—upon his successful completion of parole.

Stevenson argues the district court erred in finding that his sentence for the 1989 attempted murder expired on April 17, 1995. Because it was a consecutive sentence to be served after his four-year sentence for drug trafficking, surely, Stevenson contends, the longer sentence was ongoing on April 17, 1995 when he was paroled, and on March 15, 1996 when he was ultimately discharged. Stevenson believes he is like the defendant in *Burnett*—multiple sentences expiring on the same day, allowing for a single restoration letter to cover all the crimes. *See Burnett*, 641 F.3d at 896.

The district court correctly rejected this argument. Had Stevenson served consecutive sentences for his two 1989 convictions—effectively, a ten-year sentence—then as of March 1996, when he was discharged from parole, he still would have had prison time to serve. But Stevenson's custody history from the IDOC offender tracking system shows he was discharged from both sentences related to his 1989 convictions on April 17, 1995. And the mittimus provided a reasonable basis for the district court to determine that the 1989 offenses ended in 1995 and not in 1996 when the letter was

issued. These documents support the district court's calculations, so there was no clear error.

Stevenson speculates that the sentence for his 1989 attempted murder conviction expired on the same day as the sentence for his 1994 UUW conviction. But that conjecture falls short of proof by a preponderance of the evidence. *Boyce*, 742 F.3d at 795–96 (ruling there was "no evidence that his parole revocation and UUW sentences terminated on the same date"). For example, the "B-Both" notation on the mittimus, the government explained, did not relate to whether sentences for two convictions were paroled or discharged together. Rather, the notation designated the sentence that would keep a defendant in IDOC custody for the longest time period.

Stevenson failed to show by a preponderance of the evidence that the 1996 letter applied to both of his 1989 convictions. Like in *Love*, Stevenson "invites us to re-weigh the evidence," 7 F.4th at 678, but our review is for clear error, and Stevenson's challenge falls short.

We commend the district court for its detailed factual findings and its patience and thoroughness in conducting this sentencing. For the reasons relayed above, we AFFIRM Stevenson's sentence.